1

2

3

4

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6

7   SAMANTHA JEAN SCHULTZ,

8        Plaintiff,                      No.  2:12-CV-3091-RHW

9        v.

10  CAROLYN W. COLVIN,                   **ORDER GRANTING PLAINTIFF'S**
    Acting Commissioner of Social       **MOTION FOR SUMMARY**
11  Security,                           **JUDGMENT**

12        Defendant.

13        Before the Court are the parties' cross-motions for summary judgment, ECF

14  Nos. 25 & 30. D. James Tree represents Plaintiff Samantha Jean Schultz and

15  Special Assistant United States Attorney Christopher J. Brackett represents

16  Defendant Commissioner of Social Security (the "Commissioner"). Ms. Schultz

17  brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the

18  Commissioner's final decision, which denied her application for Disability

19  Insurance Benefits and Supplemental Security Income under Titles II & XVI of the

20  Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F.  After reviewing the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

administrative record and briefs filed by the parties, the Court is now fully

informed. For the reasons set forth below, the Court **GRANTS** Ms. Schultz's

Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary

Judgment; and **REMANDS** the matter to the Commissioner for additional

proceedings consistent with this Order.

## I.    Jurisdiction

Ms. Schultz filed an application for Child Insurance Benefits based on the

earnings of her father, Jimmy Schultz, and for Supplemental Security Income on

April 20, 2009. AR 340-349.  Her alleged onset date was January 1, 2008. *Id.* Ms.

Schultz's applications were initially denied on August 10, 2009, AR 109-205, and

on reconsideration on October 13, 2009, AR 210-214.

The first hearing with an Administrative Law Judge ("ALJ") was held before

ALJ R.J. Payne on February 8, 2011. AR 22-58. At this hearing, the ALJ heard

testimony from Medical Expert Dr. Reuben Beezy, M.D. *Id.* The ALJ issued a

decision finding Ms. Schultz ineligible for benefits on May 12, 2011. AR 113-132.

The Appeals Council denied Ms. Schultz's request for review on May 11, 2012.

AR 133-135. The case was appealed to the Eastern District of Washington on July

16, 2012. ECF No. 5. The parties filed, and the court granted, a stipulated motion

for remand pursuant to Sentence Six of 42 U.S.C. § 405(g) on October 30, 2012,

because significant portions of the recording of the February 8, 2011, hearing were inaudible. ECF No. 9 & 11.

A second hearing was held before ALJ Laura Valente on May 16, 2013. AR 59-72. Ms. Schultz was unable to attend this hearing due to last minute childcare issues, but her attorney was present. *Id.* The attorney expressed Ms. Schultz's desire not to waive her right to appear, but the ALJ proceeded. *Id.* No medical expert testified, but vocational expert Kimberly Mullinax testified. *Id.* ALJ Valente denied Ms. Schultz's applications on August 30, 2013. AR 163-181. Ms. Schultz appealed, and the Appeals Council remanded the case to the ALJ on January 29, 2014. AR 182-186.

The third hearing was held before ALJ Valente on July 8, 2014. AR 74-108. Ms. Schultz testified at this hearing, as well as vocational expert Trevor Duncan. *Id.* The ALJ denied Ms. Schultz's applications on August 29, 2014. AR 1-21. At the request of Ms. Schultz, the case was reopened in the Eastern District of Washington on January 12, 2015. ECF No. 16.

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§ 404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this

burden, the Commissioner must establish that (1) the claimant is capable of

performing other work; and (2) such work exists in "significant numbers in the

national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*,

676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed

by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the

Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144,

1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than

a mere scintilla but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

*Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

whether the Commissioner's findings are supported by substantial evidence, "a

reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Ms. Schultz was 18 years old at the alleged date of onset. AR 340. She is able to read English. AR 55-56. Her past relevant work includes: fast food worker, hostess, fast food cook, and waitress. AR 13, 53-54.

The parties dispute the conditions from which Ms. Schultz suffers. The ALJ found that her severe impairments include asthma and chronic pain syndrome (with

narcotic-seeking behavior). AR 7. The ALJ found that Ms. Schultz also suffers

from headaches, panniculitis, degenerative disc disease, cellulitis/kidney

cyst/pyelonephritis/urinary tract infection, and depression/anxiety/other affective

disorder, but these disorders are non-severe. AR 7-8. Ms. Schultz alleges that she

also suffers from Weber-Christian disease and fibromyalgia, which the ALJ alleges

are not medically determinable impairments. AR 8-9. Lupus is also mentioned in

the ALJ's decision, but there is no formal diagnosis of lupus in the record. AR 9.

## V.   The ALJ's Findings

The ALJ determined that Ms. Schultz was not under a disability within the

meaning of the Act from January 1, 2008, her alleged date of onset.  AR 16.

**At step one**, the ALJ found that Ms. Schultz had not engaged in substantial

gainful activity since January 1, 2008 (citing 20 C.F.R. §§ 404.1571 *et seq.* &

416.971 *et seq.*).  AR 7. While Ms. Schultz did have some earnings in the fourth

quarter of 2013, they did not rise to the level of substantial gainful activity. *Id.*

**At step two**, the ALJ found Ms. Schultz had the following severe

impairments: asthma and chronic pain syndrome (with narcotic-seeking behavior)

(citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). AR 7-9.

At **step three**, the ALJ found that Ms. Schultz did not have an impairment or

combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 9-10.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 8**

1    At **step four**, the ALJ found Ms. Schultz had the residual functional capacity

2    to perform less than the full range of sedentary work with unlimited posture and

3    the following additional limitations: (1) lift and carry ten pounds occasionally and

4    frequently; (2) sit for two hours at a time with usual and customary breaks for six

5    hours total in an eight-hour workday; (3) stand and/or walk for  four hours total in

6    an eight-hour workday; and (4) avoid concentrated exposures to pulmonary

7    irritants. AR 10.

8    The ALJ also determined that Ms. Schultz is unable to perform any past

9    relevant work. AR 13.

10    At **step five**, the ALJ found that after considering Ms. Schultz's age,

11    education, work experience, and residual functional capacity, there are other jobs

12    that exist in significant numbers in the national economy that she can perform,

13    including parking lot attendant, assembler, and telemarketer. AR 14-15.

14    ## VI.    Issues for Review

15    Ms. Schultz argues that the Commissioner's decision is not free of legal

16    error and not supported by substantial evidence. ECF No. 25 at 17. Specifically,

17    Ms. Schultz alleges the following errors: (1) The ALJ erred by rejecting Dr.

18    Beezy's revised opinion that, after having reviewed all of Ms. Schultz's medical

19    records, he believed her incapable of working a full workweek; (2) the ALJ erred

20    in her step two finding that Ms. Schultz's fibromyalgia and Weber-Christian

disease were non-medically determinable impairments; and (3) the ALJ erred by discounting Ms. Schultz's credibility on the basis of her activities of daily living and drug-seeking behavior. *Id.*

## VII.   Discussion

### A. The ALJ Did Not Err in Rejecting Medical Expert Dr. Beezy's Revised Opinion

It is the responsibility of the ALJ to determine the credibility of medical testimony and resolve conflicts and ambiguity in the record. *See, e.g., Andrews*, 53 F.3d at 1039. The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: treating, examining, and non-examining. *Lester,* 81 F.3d at 830. A non-examining physician's opinion may be rejected by reference to specific evidence in the record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

Dr. Beezy was a non-examining physician called by the ALJ to provide a medical opinion at the first hearing. AR 23-58. He was the only medical expert called in any of the three hearings, *see* AR 59-108, and he provided three opinions, AR 36, 1122, 1135.

At the first hearing, on February 8, 2011, he testified without seeing any of the medical records after 2010. AR 36. He concluded at the hearing that Ms. Schultz could perform full-time sedentary work. *Id.*

1    Dr. Beezy reached his second opinion on February 14, 2011, after reviewing

2    the medical records that were unavailable at the first hearing. AR 1122. In this

3    revised opinion, he added diagnoses of fibromyalgia (moderate to severe), chronic

4    pain syndrome (moderate to severe), assault by boyfriend with neck contusion,

5    episodes of urinary tract infection (mild), Cesarean section, and

6    depression/anxiety/panic attacks (moderate to severe). *Id.* He also revised his

7    opinion of Ms. Schultz's work capabilities from sedentary to less than sedentary

8    and added that he did not believe she could work an eight-hour, five-day

9    workweek. *Id.* This opinion noted that Ms. Schultz appeared to have drug seeking

10   behavior. *Id.*[1]

11    Finally, on March 3, 2011, Dr. Beezy provided a third opinion. He

12   referenced diagnoses of all of the impairments found in the second opinion, as well

13   as Weber-Christian disease, bronchitis, asthma, tobacco dependence, abdominal

14   pain, low back pain, headache, chip fracture of the right ankle, sinusitis, and lupus

15   (with "no evidence" next to the lupus diagnosis). AR 1133. He also opined that

16   Ms. Schultz could perform sedentary work with occasional climbing, stooping,

17   kneeling, crouching, and crawling, with no use of ladders, ropes, or scaffolds, and

18   she must avoid dust, odors, fumes, and pulmonary irritants. AR 1135.

19

20   ---

[1] All parties recognize that the ALJ incorrectly stated in her decision that Dr. Beezy did not consider Ms. Schultz's drug seeking behavior. This was an error the Court finds harmless.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11**

Ms. Schultz only alleges error with the rejection of the portion of Dr. Beezy's second opinion that she was unable to work a full workweek, defined as eight hours per day, five days per week. ECF No. 25 at 18-22. Ms. Schultz's argument is ultimately grounded in the allegation that the ALJ improperly rejected diagnoses of Weber-Christian disease and fibromyalgia, the second issue on review. *See infra* at pp. 13-17. With regard to Ms. Schultz's Weber-Christian disease, this diagnosis was not based on objective medical evidence, *See infra* at pp. 15-17, and Dr. Beezy's opinion could be legitimately discounted; however, insofar as Ms. Schultz's fibromyalgia diagnosis should have been recognized by the ALJ, Dr. Beezy's opinions may have more relevance. *See infra* at pp. 13-15. However, it is impossible to separate the Weber-Christian disease from the other medically determinable impairments in Dr. Beezy's overall opinion on Ms. Schultz's ability to work. Thus, the Court does not find the ALJ erred in affording little weight to Dr. Beezy's second opinion.

**B. The ALJ Erred in Part at Step Two With Regard to Fibromyalgia and Weber-Christian Disease**

At step two, the ALJ found that fibromyalgia and Weber-Christian disease were not medically determinable impairments and therefore need not be evaluated to determine severity. AR 8-9 In both instances, the ALJ found there was

1    insufficient objective medical evidence to demonstrate the existence of these

2    impairments. *Id.*

3         As previously noted, a treating provider's opinion is given the most weight,

4    followed by an examining provider, and finally a non-examining provider. *Lester,*

5    81 F.3d at 830-31. In the absence of a contrary opinion, a treating or examining

6    provider's opinion may not be rejected unless "clear and convincing" reasons are

7    provided. *Id.* at 830. If a treating or examining provider's opinion is contradicted, it

8    may only be discounted for "specific and legitimate reasons that are supported by

9    substantial evidence in the record." *Id.* at 830-31.

10        **1. Fibromyalgia**

11        The ALJ incorrectly identified Dr. Chad Byrd, M.D. a rheumatologist, as Dr.

12   Billy Nordyke, D.O., Ms. Schultz's family practice physician, in her rejection of

13   Ms. Schultz's diagnosis of fibromyalgia. AR 8-9. This is greatly relevant because

14   the ALJ based her rejection of the diagnosis on the fact the doctor did not indicate

15   in his notes that he knew the diagnostic criteria of the American College of

16   Rheumatology. AR 9.  It is quite implausible to assume a board certified

17   rheumatologist would not have this knowledge. In his treatment records, Dr. Byrd

18   specifically noted that Ms. Schultz "fulfills the American College of

19   Rheumatology's diagnostic criteria for this disease." AR 1126-27. The doctor was

20   not required to demonstrate that he knows the criteria–that is implicit in his

specialized knowledge on the subject by being an exclusive practitioner of rheumatology.

The ALJ insinuates that because Dr. Byrd did not specifically list the exact requirements of the diagnostics, it is a flawed diagnosis. To support the ALJ, the Commissioner cites to a single line in SSR 12-2p: "We cannot rely upon the physician's diagnosis [of fibromyalgia] alone." Dr. Byrd's records indicate he based the diagnosis on objective evidence. On physical exam, Dr. Byrd noted "diffuse tenderness at 14/18 tender points." AR 1126. This is fully consistent with SSR 12-2p, which requires only 11 positive tender points on physical examination. SSR 12-2p, 2012 WL 3104869. The ALJ's rationale is an insufficient reason to reject the opinion of a treating or examining physician.

The ALJ erred in rejecting the opinion of Dr. Byrd with regard to Ms. Schultz's fibromyalgia. Had the ALJ accepted his opinion, fibromyalgia would have been found to be a medically determinable impairment. Remand is appropriate to have Dr. Byrd's opinion credited and have Ms. Schultz's fibromyalgia appropriately analyzed in consideration of her disability claim.

### 2. Weber-Christian Disease

The ALJ also found Weber-Christian disease to be medically indeterminable because it was not diagnosed by an acceptable medical source. AR 8. Weber-Christian disease is mentioned by varying doctors, but none provide a diagnosis

that is not based subjective information provided by Ms. Schultz. While multiple doctors referenced biopsies performed in her adolescence that allegedly diagnosed Ms. Schultz with Weber-Christian disease, none of the doctors have viewed the biopsy results and those records are not part of the administrative record. In addition, the record demonstrates multiple possible diagnoses for Ms. Schultz's leg lesions, one of which is Weber-Christian disease.

Rheumatologist Dr. Pedro Trujillo, M.D., examined Ms. Schultz in January 2009. Dr. Trujillo stated that Ms. Schultz had two skin biopsies on her legs that were "consistent with Weber-Christian disease." AR 528. It is clear that Dr. Trujillo based his opinion on information other than the results of these biopsies, though, as he stated, "this patient most likely has Weber-Christian disease as documented in the skin biopsy many years ago. Unfortunately, we do not have the report of those biopsies." AR 530. Additionally, he ordered laboratory serologies to "investigate for any other chronic tissue disorder," which suggests he was not entirely confident in the diagnosis of Weber-Christian disease. *Id.*

Dr. Edwin Y. Rhim, M.D., also saw Ms. Schultz in January 2009, on the same day she saw Dr. Trujillo, and his records also mentioned the biopsies. AR 709. He noted a biopsy scar on her left leg, *id.*, but he suspected erythema nodosum, a different type of nodular disease.[2]

---

[2] Panniculitis was found to be a medically-determinable impairment, although non-severe.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15**

Dr. Tanvir Ahmad, M.D., also diagnosed her condition as erythema nodosum. AR 512, 513, 515. Dr. Ahmad's records are extremely skeptical about the diagnosis of Weber-Christian disease. In December 2009, he went as far as to state: "She has a history of some nodular lesion over her shin area, which is erythema nodosum versus some weird diagnosis." AR 515.

The records of rheumatologist Dr. Byrd also do not diagnose Weber-Christian disease, and they further cast doubt on the validity of the diagnosis. AR 1125. Dr. Byrd only diagnosed a "rash, definitely consistent with panniculitis of unclear etiology," *id,* and on November 2, 2009, Dr. Byrd opined, "I do wonder about the diagnosis of Weber-Christian disease." AR 1127. On the same day, Dr. Byrd provided a statement that Ms. Schultz carries a diagnosis of "recurrent skin lesions consistent with Christian-Weber disease." AR 1128. If this statement is taken to be a firm diagnosis, it would be inconsistent with his examination records.

The record does not provide any objective observations of Weber-Christian disease. The alleged diagnosis rests entirely on the subjective information provided by Ms. Schultz. Despite repeated references to biopsies, it does not appear that any of the many medical professionals who examined Ms. Schultz viewed the results of these biopsies.  Because the diagnosis rests on subjective information and the ALJ did not err in a credibility evaluation, *see infra* pp. 17-22, the Court will not disturb the ALJ's finding regarding Weber-Christian disease.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 16**

**C. The ALJ Did Not Err in Assessing Ms. Schultz's Credibility**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.* [3]

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). "General findings

---

[3] The Court recognizes that the Commissioner finds tension with the clear and convincing standard, but this is Ninth Circuit precedent.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17**

1    are insufficient:  rather the ALJ must identify what testimony is not credible and

2    what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d

3    821, 834 (9th Cir. 1995).

4         The ALJ determined that Ms. Schultz's medically determinable impairments

5    could be reasonably expected to cause some symptoms; however, the ALJ also

6    found that Ms. Schultz's statements concerning the intensity, persistence, and

7    limiting effects of her symptoms were not fully credible. AR 10.

8    **1. Ms. Schultz's activities of daily living**

9         Daily activities inconsistent with a claimant's description of pain and

10   limitations may be used by an ALJ in an adverse credibility determination. *See*

11   *Smolen*, 80 F.3d at 1284. In this case, the ALJ focused on Ms. Schultz's care for

12   her four young children and her work experience during the alleged period of

13   disability. AR 12-13. The ALJ determined that her daily activities did not support

14   the limitations she alleged. *Id.*

15        The ALJ opined that "[b]eing able to manage the childcare of four young

16   children is itself an indication that the purported functional limitations are not as

17   serious as alleged." AR 12. Ms. Schultz testified that she requires significant help

18   caring for her children and with household chores, including help from her mother,

19   her boyfriend, and his mother. AR 46. While she admitted that she is able to bathe,

20   clothe, and feed the children, she testified that she must sit while doing so. AR 87.

1    An ALJ's assertion that caring for four children cannot support the

2    limitations Ms. Schultz alleges could sometimes constitute a clear and convincing

3    reason for rejecting credibility, but in this case, the ALJ ignored important

4    testimony regarding the significant help Ms. Schultz receives with her daily

5    activities. The ALJ's reasoning is not legally sound.

6    However, the ALJ correctly determined that Ms. Schultz's limited work

7    experience during her alleged time of disability adversely affects her credibility.

8    AR 12. While work experience does not necessarily serve as a valid reason for an

9    adverse credibility finding, it can be persuasive. *See Valentine v. Comm'r Soc. Sec.*

10   *Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009). In this case, the ALJ reasonably

11   noted that her job as a casino waitress "contravenes the allegation of disabling

12   anxiety." AR 12. Further, the ALJ also noted a lack of forthcoming behavior

13   because Ms. Schultz failed to disclose some 2013 work until the ALJ pointed it out

14   at the hearing. AR 12-13. These specific reasons are sufficient for an adverse

15   credibility determination.

16   **2.   Ms. Schultz's drug-seeking behavior and other secondary gain**

17   The most important factor, however, supporting the ALJ's determination of

18   Ms. Schultz's credibility is a record of drug seeking behavior. An ALJ may find

19   that drug seeking behavior is indicative of a tendency to exaggerate pain and

20   support an adverse credibility determination. *See Edlund v. Massanari*, 253 F.3d

1152, 1157 (9th Cir. 2001) (holding that it was likely that the claimant was

exaggerating physical complaints to feed a drug addiction supported the ALJ's

decision to reject his testimony). Even if Ms. Schultz was not addicted to

painkillers or had some other secondary gain, but rather needed these medications

to cope with her chronic conditions, as she asserts in briefing, the evidence in the

record "is susceptible to more than one rational interpretation," and the Court must

uphold the ALJ's findings. *See Molina*, 674 F.3d at 1111. In this case, the record

strongly supports the ALJ's conclusion.

The ALJ pointed to records from Dr. Pragati Singh, M.D.; Caroline Clark,

ARNP; Dr. Jay Ames, M.D.; and Greg Bickel, PA-C to support the conclusion that

Ms. Schultz was not fully credible because of drug seeking behavior. The record

demonstrates incidents of untruthfulness about her medical history in an effort to

get painkillers and repeated exhibitions of frustration and inappropriate behavior

when she was refused these drugs.

Dr. Singh's records are particularly supportive of this determination. Dr.

Singh opined that Ms. Schultz "has a strong drug seeking behavior." AR 1006.

Despite the fact that Ms. Schultz had "never been diagnosed with lupus or any

other connective tissue disease," Ms. Schultz insisted that she was diagnosed with

lupus in 2009 and needed narcotics for the resulting joint pain. *Id.* Dr. Singh's

records detail rude behavior when Dr. Singh refused to provide the requested

medication. *Id.* Dr. Singh expressed concern because Ms. Schultz "went to the extent of providing incorrect medical information in order to obtain narcotics." *Id.* These records, which the ALJ afforded significant weight, provide clear and convincing reason on their own for the ALJ to reject Ms. Schultz's credibility based on drug seeking behavior and untruthfulness.

However, the records from Ms. Schultz's visit for a pain medicine follow up with Ms. Clark, ARNP, also demonstrate Ms. Schultz behaved inappropriately when refused medication. AR 1026. Ms. Schultz met with Ms. Clark in March 2010 to get refills of narcotic medication. *Id.* When Ms. Clark recommended that Ms. Schultz wean off the medications because Ms. Schultz was six-months pregnant, Ms. Schultz became "frustrated" and left the appointment without completing the consultation. *Id.*

Finally, the records of Mr. Bickel, PA-C with the Yakima Medical Clinic, support the ALJ's assessment of drug seeking behavior. AR 1242. Following a procedure with the Urology Department, Ms. Schultz met with Mr. Bickel for complaints of moderate to severe discomfort. *Id.* Mr. Bickel contacted the Urology Department, who informed him that she was listed in their records a "drug seeker" and that she "felt fine" when she left the office following the procedure. *Id.* Ms. Schultz was then referred to the emergency room. *Id.*

1    The ALJ cited substantial evidence to demonstrate that Ms. Schultz has

2    exhibited drug seeking behavior and untruthfulness in an effort to obtain

3    medication.[4] Based on this evidence, the Court does not find the ALJ erred in

4    assessing Ms. Schultz's credibility.

5    **D. Remedy**

6        The Court has the discretion to remand the case for additional evidence and

7    findings or to award benefits. *Smolen*, 80 F.3d at 1292.  The Court may award

8    benefits if the record is fully developed and further administrative proceedings

9    would serve no useful purpose. *Id.* Remand is appropriate when additional

10   administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d

11   759, 763 (9th Cir. 1989).  In this case, the Court finds that further proceedings are

12   necessary for a proper determination to be made.

13       On remand, the ALJ shall reconsider Ms. Schultz's diagnosis of

14   fibromyalgia, particularly with regard to the opinion of Dr. Byrd. The ALJ shall

15   credit Ms. Schultz's fibromyalgia as a medically determinable impairment and re-

16   evaluate Ms. Schultz's claim. If the ALJ believes a new medical expert will assist

17   this process, the Court encourages the ALJ to retain one. The ALJ shall recalculate

18

19   [4] Not all of the records cited by the ALJ support the conclusion. For example, the records of Dr. Ames demonstrate only that Ms. Schultz frequently visits the hospital for headaches, which may or may not be related to her other health issues. Likewise, the ALJ's assertion that Ms. Schultz's aggressive pursuit of her disability claim is less persuasive. However, in light of the remaining evidence, the Court accepts the ALJ's rationale for the adverse credibility determination.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 22**

Ms. Schultz's residual functional capacity in light of the outcome of these additional proceedings. The ALJ shall then present this residual functional capacity to a vocational expert to help determine if Ms. Bussing is capable of performing any other work existing in sufficient numbers in the national economy.

### VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 25**, is **GRANTED,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2.  Defendant's Motion for Summary Judgment, **ECF No. 30,** is **DENIED.**

3. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 29th day of February, 2016.


_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 23**